UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

|  |  |  |
|---|---|---|
| JOHN HENRY McMURRY, # 223416, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:07-cv-905 |
| | ) | |
| v. | ) | Honorable Janet T. Neff |
| | ) | |
| PATRICIA CARUSO, et al., | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendants. | ) | |
| | ) | |

This is a civil rights action brought *pro se* by a state prisoner under 42 U.S.C. § 1983. Plaintiff[1] is currently an inmate at the Muskegon Correctional Facility (MCF). Plaintiff's complaint relates to the conditions of his confinement at the Riverside Correctional Facility (RCF) from January 12, 2007, through March 17, 2007. Plaintiff's complaint alleges that defendants violated his Eighth Amendment rights under the Cruel and Unusual Punishments Clause by allowing him to be exposed to second hand tobacco smoke (ETS) while he was an inmate at RCF. He alleges that his transfer from RCF to MCF constituted unlawful retaliation in violation of his First Amendment rights. Plaintiff asks the court to exercise supplemental jurisdiction over his claim against defendants under Michigan's Clean Indoor Air Act. The three state employees plaintiff named as defendants are: (1) Patricia Caruso, Director of the Michigan Department of Corrections (MDOC); (2) RCF's former Warden, Carmen Palmer; and (3) RCF's former Assistant Deputy Warden, Anthony Stewart. Defendants are sued in their individual capacities for monetary damages and

---

[1]Plaintiff uses a series of appellations, including "John Henry: McMurry Sui Juris" and John Henry: McMurry Bey." (Complaint, caption and p. 8, ¶ 3).

declaratory and injunctive relief.   Plaintiff asks the court to enter an order directing "the Defendant[s]/M.D.O.C. to make plaintiff whole by [r]eturning Plaintiff to the Eastern [p]art of the State [where he can be] close to his family."  (Compl. at 18, ¶ D).

On December 19, 2007, defendants filed a motion for summary judgment. (docket # 19).  On January 16, 2008, plaintiff filed his response to defendants' motion, which he labeled as "Judicial Notice of Adjudicative Facts" (docket # 25) and consists of the following subparts:

- An "Affidavit of Truth," emphasizing that "John Henry: McMurry Bey Sui Juris['s] Secured Party and foreign neutral status recorded in the Office of the Secretary of State for Protection of claims for filing or the Michigan Republic" and that "John Henry:  McMurry Bey is <u>NOT</u> a legal 'person' and is NOT subject to the jurisdiction of the federal 'United States' or any other territory, area or enclave 'within the United States;"

- An "Official and Public Notice Affidavit & Declaration & Certificate of Sovereign Status" stating that, "the aforementioned Sovereign American National is Non-Incorporated Statutorily, Incapacitated, Statute Immune, Tax Immune, Tax Exempt, EXEMPT from Levy and <u>Claims</u> Diplomatic Immunity and Sovereign Immunity, ab initio [sic] from February 1st 1970, ad infinitum;"

- An "Affidavit and Certificate of Citizenship," stating that plaintiff is "NOT a legal 'person' born or naturalized in the federal 'United States,' [and is] "NOT subject to the exclusive jurisdiction of the legislative democracy of the United States (e.g., District of Columbia, Puerto Rico, U.S. Virgin Islands, Guam, American Samoa) or any other territory or enclave 'within the United States,'" and declaring "'sui juris' status in connection with both [his] property and name;"

- An "Affidavit: Declaration of Domicile" declaring that plaintiff is domiciled in "Detroit, MI Republic [near 48206] NON DOMESTIC;"

- A "Power of Attorney of John Henry McMurry;"

- A "Durable Power of Attorney of John Henry McMurry Bey;" and

-2-

- Pages plaintiff labeled as "Plaintiff's 42 U.S.C. §§ 2000cc, et seq. RLUIPA Claim," stating that "all defendants old and new [have] violated the RLUIPA by denying him a Tobacco-Free Environment.[2]

In addition, plaintiff filed an "Answer in Opposition" to defendants' motion for summary judgment. (docket # 26). For the reasons set forth herein, I recommend that defendants' motion for summary judgment be granted and that judgment be entered in defendants' favor on all plaintiff's federal claims. I further recommend that the court, in its discretion, decline to exercise supplemental jurisdiction.

### Applicable Standards

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006); *Briggs v. Potter*, 463 F.3d 507, 511 (6th Cir. 2006). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Swiecicki v. Delgado*, 463 F.3d 489, 492 (6th Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party

---

[2]Plaintiff never amended his complaint to include a RLUIPA claim against defendants. Even if the document plaintiff submitted is considered as proposed amendment, the proposed amendment would be denied on the basis of futility because it could not withstand a motion to dismiss. Plaintiff fails to allege facts sufficient to show that ETS exposure during his two months at RCF resulted in a substantial burden on plaintiff's exercise of his religion. *See Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 733-37 (6th Cir. 2007).

opposing the motion.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim.  *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).  Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings.  FED. R. CIV. P. 56(e); *see Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006).  The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990).  "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'"  *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252); *see Kessler v. Visteon Corp.*, 448 F.3d 326, 329 (6th Cir. 2006); *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).  "A nonmoving party may not avoid a properly supported motion for summary judgment by simply arguing that it relies solely or in part on credibility considerations.  Instead, the nonmoving party must present evidence to defeat a properly supported motion for summary judgment.  The party opposing summary judgment must be able to point to some facts which may or will entitle him to judgment, or to refute the proof of the moving party in some material portion, and the opposing party may not

merely recite the incantation, 'credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Fogerty v. MGM Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004).

## Proposed Findings of Fact

The following facts are beyond genuine issue.  Plaintiff was an inmate at the Riverside Correctional Facility (RCF) from January 12, 2007, through March 17, 2007. Carmen Palmer was RCF's warden during that two-month period, and she remained the prison's warden through its November 3, 2007 closing.  Ms. Palmer is currently the Warden of the Deerfield Correctional Facility and the Michigan Reformatory.  (Palmer Aff. ¶ 1, docket #, Ex. A).

On December 13, 2006, shortly before plaintiff's arrival at LCF, Environmental Sanitarian Tom Vogel conducted an ACA Environmental Health Standards Inspection.  All of RCF's housing units were found to be in compliance with applicable indoor air quality standards.  (Palmer Aff. ¶ 3(B)).  At all times relevant to plaintiff's complaint the MDOC has prohibited smoking or the use of any tobacco products inside all MDOC occupied buildings, including prisoner housing units. P.D. 01.01.140, ¶¶ B-C.  General population prisoners are permitted to possess smoking material in their cells.  *Id.*, ¶¶ I-K.  Prisoners in tobacco-free housing are not permitted to purchase, possess or smoke tobacco products.  *Id.*, ¶ N.

On December 22, 2006, while plaintiff was held at the Bellamy Creek Correctional Facility (IBC) a nurse practitioner issued a special accommodation notice to plaintiff for tobacco free housing.  The nurse practitioner's notice did not specify any medical condition or conditions

warranting this accommodation.  (docket # 26, attachment; docket # 1, attachment).  Plaintiff states that he suffers from asthma.  (Plf. Aff. ¶ 1, docket # 26).

On January 12, 2007, plaintiff was transferred from IBC to RCF.  (Plf. Aff. ¶ 1, docket # 1).  On February 6, 2007, plaintiff drafted a document he labeled "Constructive Legal Notice" and addressed it to Director Caruso, Warden Palmer, Assistant Deputy Warden Stewart and others.  Plaintiff stated that he had been housed in 8-South-65-B for approximately a month. Plaintiff asserted that it had been a "continuous smoking party" in the unit.  He claimed that he was continuously being exposed to ETS that had caused him to suffer coughing, watering eyes, choking, wheezing, shortness of breath, and dizziness.  The document is date stamped as having been received on February 10, 2007.  RCF's Health Unit Manager Hudson provided plaintiff with a response on February 12, 2007.  Hudson asked plaintiff to identify who was smoking, when, and where.  RCF prisoners found smoking in violation of the rules were issued tickets and transferred out of the housing unit.  (docket # 26, Attachment; Palmer Aff. ¶ 3(A); docket # 1, Plf. Aff. ¶¶ 2, 3 and attachment).

Plaintiff did not identify any of the prisoners who smoked in violation of the rules. (Plf. Aff. ¶ 3, docket # 1).  Plaintiff states that he was "continuously exposed" to "high levels" of ETS while housed at RCF and that he witnessed inmates smoking in hallways, dayrooms, bathrooms, and showers daily.  (Plf. Aff. ¶ 7).  Plaintiff states that he spoke with defendant Stewart on February 24, 2007, and was advised that the only way to stop prisoners from smoking in violation of the rules was to report them.  (Plf. Aff. ¶ 8).

On February 12, 2007, plaintiff filed grievance number RCF-07-02-140-03C. (docket # 1, attachment).  Plaintiff alleged that he was "being slowly put to death as a result of being forced

to inhale toxic second-hand smoke."  He stated that he had attempted to resolve the matter by sending his "Constructive Legal Notice" to Warden Palmer, ADW Stewart, Director Caruso and others.  Plaintiff complained that the MDOC had not "purged all smoking prisoners and staff" from the housing unit.  The grievance coordinator assigned this grievance to Assistant Resident Unit Supervisor (ARUS) C. A. Bouck.  On February 20, 2007, ARUS Bouck issued a Step I grievance response which state that plaintiff's housing unit, "8-south," was a designated non-smoking unit and that prison staff was enforcing the non-smoking rule and writing misconduct tickets to prisoners found to be in violation of the rule, and removed offending prisoners found guilty of the misconduct charge.  (docket # 1, attachment).  Plaintiff filed a Step II appeal.

On February 26, 2007, plaintiff drafted a "Notice of Default and Opportunity to Cure" claiming that the recipients of his "Constructive Legal Notice" were now in default:

> As the Respondents you are now in default and you are in agreement and stipulated to the terms of the undersigned;s [sic] dated presentment [Legal Constructive Notice] through your dishonor.  You have the right to cure this default and perform your duty in accord with Policy P.D. 01.03.140 Par. (P), (Q) & (S) you can cure within 10 days from the date you receive this Notice.
>
> Should you fail to cure this default, I will be forced to file Litigation in the Western District Court under 1983.

(docket # 26, Attachment; docket # 1, Plf. Aff. ¶ 5 and attachment).  This document was received by the MDOC's Office of Legal Affairs on February 27, 2007.

Plaintiff was transferred from RCF to the Muskegon Correctional Facility (MCF) on March 14, 2007.  (Plf. Aff. ¶ 10).  MCF is a non-smoking facility.  (docket # 26, attachment).

On March 30, 2007, Warden Palmer's issued her Step II response to grievance number RCF-07-02-140-03C:

> Staff monitor the unit for prisoner[s] [who] smoke and/or are in possession of tobacco products. When a prisoner is found to be in possession of tobacco products a misconduct is written and he is moved from tobacco free housing to another unit. Pursuant to PD 01.03.140 smoking is prohibited in all Departmental occupied buildings. Staff [members] do properly and efficiently monitor the housing units to assure that prisoners are not smoking inside the units.

(Step II grievance response, docket # 1, attachment). Warden Palmer denied plaintiff's grievance at Step II. The Step III response to grievance number RCF-07-02-140-03C denying plaintiff's appeal is dated July 23, 2007. (Step III grievance response, docket # 1, attachment).

On March 30, 2007, plaintiff filed grievance number RCF-07-03-00349-024Z. This grievance asserted that Warden Palmer, ADW Stewart, and other officials at RCF had transferred plaintiff from RCF in retaliation for plaintiff's filing of grievance number RCF-07-02-140-03C. (docket # 1, attachment). The April 24, 2007 Step I response advised plaintiff that his transfer had been initiated by MCF. The transfer order was prepared by ARUS Bonn and was signed by ADW Stewart. (docket # 1, attachment). Plaintiff appealed to Step II where Warden Palmer gave this response:

> As stated in the Step I response the Grievant was transferred to facilitate the needs of MCF as they had a prisoner transferring to RCF. Grievant was transferred because he meets policy and medical requirements to be housed at MCF. Grievant was transferred within the guidelines set forth in PD 05.01.140 Prisoner Placement and Transfer. No violation of policy was found.

(docket #1, attachment). Defendant Palmer denied plaintiff's Step II appeal. On July 23, 2007, plaintiff's Step III appeal was denied.

On July 25, 2007, plaintiff filed a lawsuit in this court against Patricia Caruso, MCF's Warden Shirlee Harry, and MCF's Assistant Deputy Warden, Mark Malone. Plaintiff complained

that he had been exposed to ETS at MCF. *McMurry Bey v. Caruso, et al.*, 1:07-cv-716 (W.D. Mich.).

On September 12, 2007, plaintiff filed this complaint regarding the conditions of his confinement at RCF from January 12, 2007, through March 17, 2007.

### Discussion

**I.     Mootness**

Plaintiff's complaint concerns the conditions of his confinement at RCF during the two month period from January 12, 2007, through March 17, 2007. Plaintiff is and has been an inmate at MCF since March 17, 2007. (docket # 1, ¶ II). The State of Michigan closed RCF on November 3, 2007. Plaintiff's claims for declaratory and injunctive relief against defendants are moot as a result of plaintiff's transfer to MCF and the closing of RCF. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *see also Henderson v. Martin*, 73 F. App'x 115, 117 (6th Cir. 2003).

**II.     Eighth Amendment Claims of Deliberate Indifference to Serious Medical Needs**

The Supreme Court has recognized that, "[T]he Constitution does not mandate comfortable prisons, and prisons . . . which house persons convicted of serious crimes, cannot be free of discomfort." *Rhoades v. Chapman*, 452 U.S. 337, 349 (1981); *accord Bruggeman v. Paxton*, 15 F. App'x 202, 205 (6th Cir. 2001)("The Constitution does not mandate comfortable prisons" and a prisoner's claim that he was denied transfer to a prison or unit where he would have been more comfortable fails to state a claim.)[3]. Plaintiff alleges that defendants were deliberately indifferent

_____

[3]It is pellucid that plaintiff desired a transfer from RCF, and that he would have preferred incarceration in Eastern District of Michigan. Plaintiff did not enjoy any constitutional right to be housed in the prison of his choice. Plaintiff's assignment to RCF and the defendants' failure to

to his serious medical needs in violation of plaintiff's Eighth Amendment rights under the Cruel and Unusual Punishments Clause.  In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that deliberate indifference to a prisoner's serious medical needs, manifested by prison staff's intentional interference with treatment or intentional denial or delay of access to medical care, amounts to the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 104-05.  In judging the sufficiency of "deliberate indifference" claims, the court must view the surrounding circumstances, including the extent of the injury, the realistic possibilities of treatment, and the possible consequences to the prisoner of failing to provide immediate medical attention.  *Westlake v. Lucas*, 537 F.2d 857, 860 n.4 (6th Cir. 1976); *see Byrd v. Wilson*, 701 F.2d 592 (6th Cir. 1983).

In *Wilson v. Seiter*, 501 U.S. 294 (1991), the Supreme Court clarified the deliberate indifference standard.  Under *Wilson*, a prisoner claiming cruel and unusual punishment must establish both that the deprivation was sufficiently serious to rise to constitutional levels (an objective component) and that the state official acted with a sufficiently culpable state of mind (a subjective component).  501 U.S. at 298.  No reasonable trier of fact could find in plaintiff's favor on either component of his claims against the defendants.

---

transfer plaintiff to a prison in the Eastern District are "not subject to audit under the Due Process Clause."  *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *see, e.g.*, *Myles v. Crowley*, No. 98-1908, 1999 WL 1313, at *1 (6th Cir. Nov. 4, 1999)("Myles's claim that the denial of his transfer request constituted a violation of his right to due process is frivolous because there is no right under federal law giving a prisoner any choice concerning the facility where he will be incarcerated.")(citing *Meachum*).  Michigan prisoners have attempted to manipulate the prisons to which they are assigned by asserting that their tobacco-free housing assignment is not adequately being enforced and that they should be moved to a different prison.  *See, e.g.*, *Williams v. Howes*, No. 1:05-cv-817, 2007 WL 1032365, at * 11, 14 (W.D. Mich. Mar. 30, 2007).

The objective component of the Eighth Amendment standard requires that a plaintiff be suffering from a serious medical condition.  "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are serious." *Hudson v. McMillian*, 503 U.S. 1,  9 (1992). "[D]elay or even denial of medical treatment for superficial, nonserious physical conditions does not constitute a constitutional violation."  *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2005).  "[A] medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Id.*  A non-obvious need for medical care can satisfy the "serious" medical need requirement, but "the inmate must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Johnson v. Karnes*, 389 F.3d 868, 874 (6th Cir. 2005); *see Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).  Plaintiff did obtain from a nurse a special accommodation on the basis of his claim that he has asthma.  He has not, however, presented any medical records establishing this or any other medical condition. Moreover, the mere presence of a serious medical condition is insufficient to establish the objective component.  The plaintiff must make "an 'objective' showing that the deprivation was 'sufficiently serious' or that the result of the defendant's denial was sufficiently serious." *Hudson*, 508 U.S. at 8; *see Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003).

 Plaintiff falls far short of satisfying the objective component.  Plaintiff has not alleged or submitted evidence that he received constitutionally deficient medical care for any medical condition during his confinement at RCF.  He did not present any evidence indicating that he required hospitalization or other emergency medical attention.  There is no medical evidence that

-11-

plaintiff's asthma was particularly severe.  There is no evidence that defendants denied or delayed plaintiff's access to medical care.  The defendants are supervisors, not first-line healthcare providers or prison guards.  Liability of supervisory officers under 42 U.S.C. § 1983 cannot be based upon a *respondeat superior* theory.  *See Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006).  Plaintiff has not presented evidence that defendants caused an objectively serious deprivation.  *See Clark-Murphy v. Foreback*, 439 F.3d 280, 286-87 (6th Cir. 2006).  I find that no reasonable trier of fact could find in plaintiff's favor on the objective component of his Eighth Amendment claims against defendants.

The second prong under Estelle requires a showing of "deliberate indifference" to plaintiff's serious medical need.  The Supreme Court held in *Farmer v. Brennan*, 511 U.S. 825 (1994), that deliberate indifference is tantamount to a finding of criminal recklessness.  A prison official cannot be found liable for denying an inmate humane conditions of confinement "unless the official knows of and disregards an excessive risk to inmate health or safety." 511 U.S. at 837.  The Sixth Circuit's decision in *Miller v. Calhoun County*, 408 F.3d 803 (6th Cir. 2005), summarized the subjective component's requirements:

> The subjective component, by contrast, requires a showing that the prison official possessed a sufficiently culpable state of mind in denying medical care.  Deliberate indifference requires a degree of culpability greater than mere negligence, but less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.  The prison official's state of mind must evince deliberateness tantamount to intent to punish. Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference. Thus, an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Miller*, 408 F.3d at 813 (citations and quotations omitted).   Plaintiff obtained a special accommodation notice from a nurse practitioner on December 22, 2006.  He was an inmate at RCF

for approximately two months.  There is no evidence that the "defendants deliberately failed to respond to the repeated recommendations by medical personnel that [plaintiff] be removed to a smoke free environment in order to avoid further detriment to his health."  *Reilly v. Grayson*, 310 F.3d 519, 521 (6th Cir. 2002).  MDOC rules prohibited smoking in all the RCF housing units.  The prisoners who smoked in violation of the rules were prosecuted and punished.  I find that no reasonable trier of fact could find in plaintiff's favor on the subjective component of his Eighth Amendment claims.

### III.   Eighth Amendment Claims of "Future Injury" Based on ETS Exposure

Plaintiff' *pro se* complaint is not a model of clarity.  The complaint's reference to the Supreme Court's decision in *Helling v. McKinney*, 509 U.S. 25 (1993), and plaintiff's subsequent citations to *Helling* in his briefs (docket # 35 at 5, docket # 38 at 5) suggest that plaintiff is attempting to assert  Eighth Amendment claims against defendants based on possible damage to his future health arising from the ETS exposure that occurred at LCF.  *Helling v. McKinney* is the seminal case in this area.  In *Helling v. McKinney*, a Nevada prisoner alleged his Eighth Amendment rights under the Cruel and Unusual Punishments Clause had been violated by his double bunk assignment to a cell with another inmate who smoked five packs of cigarettes per day.  The Supreme Court held that the prisoner had successfully alleged an Eighth Amendment violation by claiming that the defendants had, with deliberate indifference, "exposed him to levels of ETS that pose[d] and unreasonable risk of serious damage to his future health."  509 U.S. at 35.  The Supreme Court emphasized that on remand the prisoner would be required to prove both the subjective and objective elements necessary to prove an Eighth Amendment violation, and that a failure of evidentiary proof

-13-

as to either element would entitle the defendants to judgment in their favor.  *Id.*  The Court reiterated that "while the Eighth Amendment applies to conditions of confinement that are not formally imposed as a sentence for a crime, such claims require proof of a subjective component, and that where the claim alleges inhumane conditions of confinement or failure to attend to a prisoner's medical needs, the standard for that state of mind is the 'deliberate indifference' standard of *Estelle v. Gamble*, 429 U.S. 97 (1976)." *Helling*, 509 U.S. at 29-30.   The Court's discussion of the subjective component in *Helling v. McKinney* concluded with direction to the lower court that on remand "deliberate indifference" was to be determined in light of the current conduct and attitudes of prison authorities, and that adoption of smoking policies would "bear heavily on the inquiry." 509 U.S. at 36.  The lower court's inquiry was also to take into consideration the realities of prison administration.  *Id.* at 36-37.  Shortly after *Helling*, the Supreme Court's *Farmer v. Brennan* decision made it clear that, "[A] prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  511 U.S. at 837.

*Helling v. McKinney* carefully outlined the objective component of a prisoner's Eighth Amendment future injury claim based on prison ETS exposure.  The plaintiff must present proof of exposure to unreasonably high levels of ETS.[4]  509 U.S. at 35.  "More than mere scientific

---

[4]"Plainly relevant to this determination" was the fact that plaintiff had been moved to a different prison and was "no longer the cellmate of a five-pack-a-day smoker." 509 U.S. at 35-35. The Supreme Court also observed that the prison had adopted a formal smoking policy restricting smoking to certain areas and where wardens could, contingent on space availability, designate non-

and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury

to health will be caused by exposure to ETS" is necessary to establish the objective component. 509

U.S. at 36. "It also requires a court to assess whether society considers the risk that the prisoner

complains of to be so grave that it violates contemporary standards of decency to expose *anyone*

unwillingly to such a risk. In other words, the prisoner must show that the risk of which he

complains is not one that today's society chooses to tolerate." *Id.* Plaintiff has not presented

evidence on which a reasonable trier of fact could find in his favor on either the subjective or

objective components of this type of Eighth Amendment claim against defendants. *Helling v.

McKinney* did not mandate smoke free prisons. *See Scott v. District of Columbia*, 139 F.3d 940, 942

(D.C. Cir. 1998); *see also Ali v. Caruso*, No. 2:07-cv-161, 2007 WL 4178637, at * 5 (W.D. Mich.

Nov. 20, 2007); *Mansoori v. Lappin*, No. 04-3241-JAR, 2007 WL 401290, at * 9 (D. Kan. Feb. 1,

2007)("[U]nder constitutional law, plaintiff is not entitled to a smoke free correctional facility.").

Plaintiff was assigned to a non-smoking unit for his two months' incarceration at

RCF. Plaintiff presented no evidence that defendants had knowledge that plaintiff's asthma was

particularly severe. The defendants directed their subordinates to enforce the applicable non-

smoking policies. Enforcement efforts were significantly hampered by the plaintiff's refusal to

identify inmates who violated the rules. It is well established that imperfect enforcement of a non-

smoking policies does not rise to the level of deliberate indifference.[5] *See Talal v. White*, 403 F.3d

---

smoking areas in dormitory sections. The Court noted that the changed policies could make it impossible for the plaintiff to prove that he would be exposed to an unreasonable risk with respect to his future health or entitlement to an injunction. *Id.* at 36.

[5]"Prisons, by definition, are places of involuntary confinement of persons who have demonstrated proclivity for antisocial criminal, and often violent, conduct. Inmates have necessarily shown a lapse in ability to control and conform their behavior to the legitimate standards of society

-15-

423, 427 (6th Cir. 2004); *Wilson v. Hofbauer*, 113 F. App'x 651, 652 (6th Cir. 2004); *Morrer v. Price*, 83 F. App'x 770, 773 (6th Cir. 2003); *see also Brown v. Head*, 190 F. App'x 808, 810 (11th Cir. 2006); *Rivera v. Marcoantonio*, 153 F. App'x 857, 859 (3d Cir. 2005); *Ciempa v. Ward*, 150 F. App'x 905, 908 (10th Cir. 2005); *Kelly v. Hicks*, 400 F.3d 1282 (11th Cir. 2005); *Taylor v. Prelesnik*, No. 1:06-cv-898, 2008 WL 2199695, at * 2 (W.D. Mich. May 23, 2008); *Collins v. Wilkerson*, No. 2:05-cv-367, 2008 WL 1844320, at * 5-6 (S.D. Ohio Apr. 22, 2008); *accord Johnson v. Goord*, No. 01 Civ. 9587(PKC), 2004 WL 2199500, at *17 (S.D.N.Y. Sept. 29, 2004)("No system of enforcement, however, will be perfect, and prison officials cannot be held accountable under the Constitution for failing to extinguish every attempt to flout the [prison's] rules [regarding smoking].").  Plaintiff's decision to withhold information necessary for prison officials to identify and punish violators severely undercuts any Eighth Amendment claim.  *See Wester v. Raines,* No. 5:05-cv-160-SPM, 2007 WL 171898, at * 1, 5 (N.D. Fla. Jan. 17, 2007); *Ciempa*, 150 F. App's at 908; *Omar v. Brooks*, No. 04-cv-248, 2004 WL 3258917, at * 4 (E.D. Va. Aug. 30, 2004)(Defendants were not deliberately indifferent to asthmatic prisoner's exposure to ETS where prisoner's "steadfast refusal to identify offenders obstructed remedial action within his unit" and his complaints were "at least partially motivated by his desire to transfer" to a different prison facility.). On the this record, no reasonable trier of fact could find in plaintiff's favor on the subjective component of "future injury" Eighth Amendment claims against defendants.

---

by the normal impulses of self-restraint; they have shown an inability to regulate their conduct in a way that reflects either a respect for the law or an appreciation of the rights of others."  *Hudson v. Palmer*, 468 U.S. 517, 526 (1984).

The evidence plaintiff presented on the objective component is likewise deficient. It was plaintiff's burden to present evidence that he had been exposed to unreasonably high levels of ETS and the exposure's significant adverse impact on plaintiff's future health. Plaintiff presented evidence that he experienced some ETS exposure during the two months he was an inmate at RCF. Plaintiff's proofs are devoid of specifics as to which prisoners were smoking on which dates, how close such prisoners were in proximity to plaintiff and for how long, and what steps, if any plaintiff took to minimize his exposure either through movement or reporting the offending prisoner or prisoners. Plaintiff did not submit any scientific evidence measuring or quantifying his level of exposure. *See Collins v. Wilkerson*, 2008 WL 1844320, at * 6; *Conyers v. Deschane*, No. 1:07-cv-579, 2007 WL 2463316, at * 3 (W.D. Mich. Aug. 30, 2007). Affidavits to the effect that "some exposure" occurred are insufficient to support this type of Eighth Amendment claim. *See Lewis v. Jarriel*, No. CV-304-96, 2006 WL 839390, at * 4 (S.D. Ga. Mar. 24, 2006); *see also Mansoori*, 2007 WL 401290, at * 10. Furthermore, a prisoner's "exposure to smoke must cause more than mere discomfort or inconvenience." *Talal v. White*, 403 F.3d at 426. Plaintiff did not present medical evidence that his exposure to ETS at RCF caused him anything beyond discomfort. *See Oliver v. Deen*, 77 F.3d 156, 159-61 (7th Cir. 1996)(An asthmatic inmate's assignment to cells with smoking inmates for 133 days resulting in ETS exposure which aggravated the plaintiff's asthma and necessitated his increased use of an inhaler failed to satisfy the objective component.); *see also Kelley v. Hicks*, 400 F.3d 1282, 1285 (11th Cir. 2005). Plaintiff did not present any scientific or statistical evidence regarding the seriousness of potential harm and the likelihood that such injury to health would actually be caused by exposure to ETS. 509 U.S. at 36; *see Larson v. Kempker*, 414 F.3d 936, 940 (8th Cir. 2005). Moreover, it was plaintiff's burden to show that the risk he complains

-17-

of is so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk" -- that "the risk of which he complains is not one that today's society chooses to tolerate." 509 U.S. at 36.  It is obvious from the wealth of case law in this area that the risk of which plaintiff complains of *is* one that today's society chooses to tolerate.  *See Oliver v. Deen*, 77 F.3d at 158; *see also Griffin v. DeRosa*, 153 F. App'x 851, 853 (3d Cir. 2005)(A prisoner's allegations that he had been exposed to ETS in inadequately ventilated restrooms because each time he entered the restroom he found eight-to-ten inmates smoking failed to allege unreasonably high levels of ETS contrary to contemporary standards of decency.); *Richardson v. Spurlock*, 260 F.3d 495, 498 (5th Cir. 2001)("While [the prisoner's] sporadic and fleeting exposure to second-hand smoke might have been unwelcome and unpleasant, it did not constitute 'unreasonably high levels of ETS.'"); *Hankins v. Bethea*, No. CIV. A 0:05-3334 DCNBM, 2007 WL 172509, at * 6 (D. S.C. Jan. 18, 2007)("Exposure to moderate levels is a common fact of contemporary life, and Plaintiff has failed to present evidence to show that the amount of ETS he was exposed to during the relatively short [5-month] period of time set forth in his complaint was at such an unreasonably high level that it violated contemporary standards of decency.");  *Despart v. Kearney*, No. 2:02-cv-4-FTM-29DNF, 2006 WL 2789007, at * 12 (M.D. Fla. Sept. 26, 2006); *Wester v. Raines*, No. 5:05 cv 160/SPM/EMT, 2006 WL 2644931, at * 5 (N.D. Fla. Sept. 14, 2006)("[E]xposure to second-hand smoke is an ordinary consequence of everyday life for *non-prisoners* as office buildings, restaurants and other public facilities often have designated smoking areas at or near their entrance."); *Colon v. Sawyer*, No. 9:03-CV-1018 LEK/DEP, 2006 WL 721763, at * 9 (N.D.N.Y. Mar. 20, 2006)(Asthmatic plaintiff's claim that "he [was] housed in a dormitory unit where smoking [was] permitted, and that he [was] subjected to ETS near the dining hall entrance and exit, as well as his

speculation that such circumstances 'may result in catastrophic harm to him' simply [does] not describe conditions which rise to a level which today's society chooses not to tolerate."); *Bloch v. Garrison*, No. Civ. A. 1:05 CV 318, 2006 WL 623587, at * 2 (E.D. Tex. Mar. 10, 2006). In summary, I find that defendants are entitled to judgment in their favor as a matter of law on all plaintiff's Eighth Amendment claims.

### IV. Retaliation

On summary judgment, a plaintiff asserting a First Amendment retaliation claim must present evidentiary proof on which a reasonable trier of fact could find (1) that the plaintiff had engaged in conduct protected by the First Amendment; (2) that an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) that the adverse action taken against the plaintiff was motivated, at least in part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*); *see also Lustig v. Mondeau*, 211 F. App'x 364, 372 (6th Cir. 2006); *McGee v. Schoolcraft Cmty. Coll.*, 167 F. App'x 429, 438 (6th Cir. 2006). The plaintiff has the burden of proof on all three elements. *See, e.g.*, *Murray v. Evert*, 84 F. App'x 553, 556 (6th Cir. 2003).

Plaintiff alleges that his March 2007 transfer to MCF was retaliatory. Plaintiff identified grievance number RCF-07-02-140-03C as his protected conduct. (Compl., ¶ 40). A prisoner's filing of a grievance can constitute protected conduct. *See Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000); *see also Scott v. Stone*, 254 F. App'x 469, 472 (6th Cir. 2007).

The second element of a retaliation claim is an adverse action against plaintiff that would deter a person of ordinary firmness from engaging in that conduct. It is well established that

-19-

"a prisoner is expected to endure more than the average citizen and enjoys no protected right to remain incarcerated in a given correctional facility." *Hix v. Tennessee Dep't of Corrections*, 196 F. App'x 350, 358 (6th Cir. 2006) (citing *Siggers-El v. Barlow*, 412 F.3d 693, 704 (6th Cir.2005)); *see Vartinelli v. Hammer*, No. 1:06-cv-136,  2008 WL 3875395, at *6 (W.D. Mich. Aug. 15, 2008).  A transfer from one prison to another generally  "cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights." *Hix v. Tenn. Dep't of Corrections*, 196 F. App'x at  358.  "[T]he transfer of a prisoner may rise to the level of unconstitutional retaliation where there are foreseeable consequences to the transfer that would inhibit the prisoner's access to courts."   *Id.*   Plaintiff presented no evidence of such "aggravating circumstances." Plaintiff clearly retained access to this court, as is evidenced by the lawsuits he filed on July 25, 2007, and September 12, 2007.

Finally, under the causation element of a prisoner's *prima facie* case for retaliation, the subjective motivation of the decisionmaker is at issue.  The plaintiff must show that the decision to transfer him to MCF was motivated, at least in part, by the plaintiff's protected activity. *Thaddeus-X*, 175 F.3d at 399; *see Skinner v. Bolden*, 89 F. App'x 579 (6th Cir. 2004) ("[C]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive.").   Once the plaintiff has met this burden, if the defendant can show that the same action would have been taken in the absence of protected activity, the defendant is entitled to prevail on summary judgment. *Thaddeus-X*, 175 F.3d at 399; *see Smith v. Campbell*  250 F.3d 1032, 1038 (6th Cir. 2001).  No reasonable trier of fact confronted with this record could find in plaintiff's favor on the causation component.  Plaintiff presented no evidence that his transfer from RCF to MCF was motivated in any way by his grievance.  Plaintiff's transfer came in response to a request initiated by prison

-20-

officials at MCF.  Plaintiff was transferred after the Step I grievance response by ARUS Bouck. There is no evidence that at the time of the transfer defendants Caruso or Stewart had any knowledge of plaintiff's grievance.  Warden Palmer wrote her Step II grievance response weeks after plaintiff's transfer to MCF.  Plaintiff presented no evidence that Warden Palmer ordered or approved his transfer.  I find that defendants are entitled to judgment in their favor was a matter of law on plaintiff's First Amendment retaliation claims.

## V.      Qualified Immunity

Alternatively, I find that defendants are entitled to qualified immunity.  The Supreme Court's decision in *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001), emphasized that the defense of qualified immunity must be addressed in proper sequence.  The initial inquiry must be whether the plaintiff has alleged and supported with evidence[6] facts showing that the defendants' conduct violated a constitutional right.  *Saucier*, 533 U.S. at 201; *see Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006); *see also Armstrong v. City of Melvindale*, 432 F.3d 695, 699 (6th Cir. 2006)("Whether a constitutional violation occurred is a threshold issue: if the officers' conduct violated no constitutionally protected right, there is no need for further analysis."); *accord Caudill*

---

[6]A qualified immunity defense can be asserted at various stages of the litigation, including the summary judgment stage.  *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994).  The qualified immunity inquiry at the summary judgment stage is distinguished from the Rule 12(b)(6) stage in that generalized notice pleading no longer suffices, and the broader summary judgment record provides the framework within which the actions of each individual defendant must be evaluated. *See Riverdale Mills Corp. v. Pimpare*, 392 F.3d 55, 62 (1st Cir. 2004).  At the summary judgment stage, a plaintiff may not rely on his pleadings.  Rather, the issue is whether "the plaintiff has offered sufficient evidence to indicate that what the official did was objectively unreasonable in light of the clearly established constitutional rights."  *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 905 (6th Cir. 2004).

*v. Hollan*, 431 F.3d 900, 908 n.5 (6th Cir. 2005)("[D]istrict courts . . . may not assume a constitutional violation or skip to qualified immunity, even when qualified immunity analysis seems conclusive.").  Plaintiff did not satisfy the threshold constitutional violation  requirement for the reasons previously stated and defendants are entitled to qualified immunity on all plaintiff's federal claims on this alternative ground.

Assuming *arguendo* that plaintiff had been able to satisfy the initial requirement, plaintiff would nonetheless fall short of showing that the Eighth Amendment[7] right plaintiff claims each defendant violated was "clearly established" such that a reasonable official in the defendant's position, at the time the act was committed, would have understood that his or her behavior violated that right.  533 U.S. at 201.  The Supreme Court's decision in *Brosseau v. Haugen*, 543 U.S. 194 (2004), examined the underlying purpose of the requiring that the law be clearly established:

> Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, misapprehends the law governing the circumstances she confronted. . . . Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.  If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.

543 U.S. at 198.  The Supreme Court and the Sixth Circuit have emphasized that the second inquiry "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen*, 543 U.S. at 198 (quoting *Saucier*, 533 U.S. at 201); *see Silberstein*, 440 F.3d

---

[7]Defendants carefully limited the discussion of the second prong of the qualified immunity analysis to plaintiff's Eighth Amendment claims.  (Defendant's Brief at 8-11).  Sixth Circuit decisions such as *Siggers-El v. Barlow*, 412 F.3d 693, 704 (6th Cir. 2005) make it difficult to argue that the law with regard to plaintiff's First Amendment rights was not clearly established.

at 316.  "'[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant sense.'"  *Lyons v. City of Xenia*, 417 F.3d 565, 572 (6th Cir. 2005)(quoting *Brosseau*, 543 U.S. at 199).  "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see Rippy v. Hattaway*, 270 F.3d 416, 424 (6th Cir. 2001). "Thus, '[t]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001) (quoting *Saucier*, 533 U.S. at 201); *see Weaver v. Shadoan*, 340 F.3d 398, 407 (6th Cir. 2003); *Risbridger v. Connelly*, 275 F.3d 565, 569 (6th Cir. 2002).  Although it is not always necessary to find a case where identical conduct had previously been determined to be unconstitutional,[8] in light of pre-existing law, the unlawfulness must be apparent.  *See Wilson v. Layne*, 526 U.S. 603, 615 (1999); *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003); *Risbridger*, 273 F.3d at 569.  "'[Q]ualified immunity protects all but the plainly incompetent or those who knowingly violate the law.'" *Armstrong*, 432 F.3d at 699 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  "Thus, officials are 'entitled to qualified immunity [when] their decision was reasonable, even if mistaken.'" *Toms v. Taft*, 338 F.3d 519, 524 (6th Cir. 2003) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).  The court must focus on whether, at the time the defendant acted, the right asserted was "clearly established" by the decisions of the Supreme Court or the Sixth Circuit.  *See Reynolds v. City of Anchorage*, 379 F.3d 358, 366 (6th Cir. 2004); *Gragg v. Kentucky Cabinet for Workforce Dev.*, 289 F.3d 958, 964 (6th Cir. 2002).  "If reasonable officials could

---

[8]"Of course, in an obvious case, [general constitutional] standards can 'clearly establish' the answer, even without a body of relevant case law." *Brosseau*, 543 U.S. at 199; *Lyons*, 417 F.3d at 572.

disagree on the issue, immunity should be recognized." *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999); *see Akers*, 352 F.3d at 1042. "For qualified immunity to be surrendered, pre-existing law must dictate, that is truly compel (not just suggest or allow to raise a question about), the conclusion for every-like situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." *Saylor v. Board of Educ.*, 118 F.3d 507, 514 (6th Cir. 1997); *see Gragg*, 289 F.3d at 964. "The burden of convincing a court that the law was clearly established 'rests squarely with the plaintiff.'" *Key* 179 F.3d at 1000 (quoting *Cope v. Heltsley*, 128 F.3d 452, 459 (6th Cir. 1997)).

Plaintiff was housed at RCF from January 12, 2007, through March 17, 2007. Plaintiff's asthma never required emergency medical treatment. Smoking was prohibited in all prison housing units during plaintiff's entire incarceration at LCF, and prisoners received punishment for violating the rules against smoking. There was and is no Supreme Court or Sixth Circuit authority finding a violation of the Eighth Amendment's Cruel and Unusual Punishments Clause under remotely similar circumstances. I find that defendants are entitled to judgment in their favor as a matter of law on the alternative basis of qualified immunity.

## VI.    Supplemental Jurisdiction

Plaintiff asks the court to exercise jurisdiction over a purported State law claim under Michigan's Clean Indoor Air Act. (Compl., ¶¶ 34-36). "Supplemental jurisdiction is a doctrine of discretion, not of plaintiff's right." *Habich v. City of Dearborn*, 331 F.3d 524, 535 (6th Cir. 2003). Generally, where all federal claims have been dismissed, federal courts decline to exercise supplemental jurisdiction over a plaintiff's state-law claims. *See* 28 U.S.C. § 1367(c)(3); *Robert*

-24-

*N. Clemens Trust v. Morgan Stanley DW, Inc.*, 485 F. 3d 840, 853 (6th Cir. 2007); *see also Reynosa v. Schultz*, 282 F. App'x 386, 390-91 (6th Cir. 2008) .  There is no reason in this case to depart from the general rule.  I recommend that the court, in its discretion, decline to exercise supplemental jurisdiction.

### **Recommended Disposition**

For the foregoing reasons, I recommend that defendants' motion for summary judgment (docket # 19) be granted, and that judgment be entered in defendants' favor on all plaintiff's federal claims.  I further recommend that the court, in its discretion, decline to exercise supplemental jurisdiction.


Dated:   November 24, 2008          /s/  Joseph G. Scoville                              
                                    United States Magistrate Judge


### **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *McClanahan v. Commissioner*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).